| | |
|---|---|
| 1 | BARBARA A. LAWLESS - Bar # 53195 |
| 2 | EMILY S. McGRATH - Bar # 289624<br>LAWLESS, LAWLESS & McGRATH |
| 3 | 354 Pine Street, Fourth Floor<br>San Francisco, CA 94104 |
| 4 | Telephone:  (415) 391-7555<br>Facsimile:   (415) 391-4228 |
| 5 | E-mails: blawless@lawlesssf.com<br>             emcgrath@lawlesssf.com |
| 6 | Attorneys for PLAINTIFF |
| 7 | CHRISTIAN ELEBIARY |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN ELEBIARY,<br><br>             PLAINTIFF,<br><br>     vs.<br><br>PEGASYSTEMS INC., CHAD DAIGLE, and DOES ONE through THIRTY, inclusive,<br><br>             Defendants. | Case No. 22-cv-06796-WHO<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES ARISING FROM:**<br>**SEXUAL HARASSMENT;**<br>**PUBLIC POLICY VIOLATION;**<br>**RETALIATION;**<br>**DISCHARGE IN VIOLATION OF PUBLIC POLICY;**<br>**FAILURE TO PREVENT OR CORRECT HARASSMENT AND/OR RETALIATION;**<br>**DISABILITY DISCRIMINATION;**<br>**FAILURE TO ACCOMMODATE;**<br>**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS;**<br>**RETALIATION;**<br>**WHISTLEBLOWER RETALIATION;**<br>**DISCHARGE IN VIOLATION OF PUBLIC POLICY;**<br>**INJUNCTIVE RELIEF, FOR ATTORNEY'S FEES AND COSTS AND FOR PUNITIVE DAMAGES**<br><br>JURY TRIAL DEMANDED<br><br>*Amount Demanded Exceeds $25,000 (Gov't. Code § 72055)* |

PLAINTIFF CHRISTIAN ELEBIARY ("PLAINTIFF") complains against Defendants, and each of them, demands a trial by jury of all issues and for causes of action alleges:

**FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION**

1. PLAINTIFF is ignorant of the true names or capacities of the Defendants sued here under fictitious names DOES ONE through THIRTY, inclusive. PLAINTIFF is informed and believes that each of the DOE Defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.

2. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each Defendant was the agent or employee of each and every other Defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each of the remaining Defendants. All actions of each Defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other Defendant.

3. This Court has jurisdiction over this matter and venue is proper because wrongful acts and/or omissions including PLAINTIFF'S termination alleged herein occurred in San Francisco County, California (Cal. Gov't. Code § 12965(b)). Furthermore, PLAINTIFF resided in this county and worked remotely from his home at relevant times mentioned herein.

4. At the pertinent times mentioned in this complaint, Defendant PEGASYSTEMS INC. (hereinafter referred to as "PEGASYSTEMS"), was a corporation doing business in the State of California, County of San Francisco.

5. At the pertinent times mentioned in these complaints Defendant CHAD DAIGLE (hereinafter referred to as DAIGLE or the individual defendant) was a manager and supervisor in a position of authority at PEGASYSTEMS who conducted significant business in California.

6. PLAINTIFF was hired in or about July 2019 for the position of Senior Customer Success Manager at the company Defendant PEGASYSTEMS. PLAINTIFF's direct manager was CHAD DAIGLE who was the Senior Director of Client Success at PEGASYSTEMS and who regularly conducted business in San Francisco County.

7. PLAINTIFF grew increasingly uncomfortable and anxious around DAIGLE in the

second half of 2019 because DAIGLE touched PLAINTIFF's buttocks and invited PLAINTIFF up to his hotel room for a drink during multiple work trips.

8. On or about September 11, 2019, DAIGLE invited PLAINTIFF up to his room for a drink after a business dinner. When PLAINTIFF declined, DAIGLE patted PLAINTIFF on the buttocks and said words to the effect of - Okay, well keep up the good work.

9. On or about October 30, 2019, DAIGLE asked PLAINTIFF to give him a ride back to his hotel room. During the ride, DAIGLE once again invited PLAINTIFF to his room for a drink. The way DAIGLE extended the invitation led PLAINTIFF believe that DAIGLE wanted to do more than just have a drink.

10. On or about November 5, 2019, DAIGLE again invited PLAINTIFF to his room for a drink and patted PLAINTIFF on the buttocks. PLAINTIFF was almost certain at this point that DAIGLE was propositioning him for a sexual encounter.

11. As a result of these encounters, PLAINTIFF was extremely uncomfortable when in the physical presence of his boss, DAIGLE, but was still able to perform his job very well as was evidenced by his being recognized in January 2020 as a Top Performer and receiving a discretionary Restricted Stock Unit award.

12. On or about February 25, 2020, DAIGLE asked PLAINTIFF to go to dinner. PLAINTIFF was scheduled to meet with his boss the next day to discuss PEGASYSTEM's customer accounts and accepted the dinner invitation. However, PLAINTIFF cancelled shortly thereafter because PLAINTIFF was anxious about seeing DAIGLE alone during evening hours.

13. The next day, on or about February 26, 2020, PLAINTIFF met with DAIGLE to discuss the status of several important company accounts. PLAINTIFF was surprised when DAIGLE began going through each of PLAINTIFF's accounts and giving him a list of items that DAIGLE suddenly alleged needed improvement, which were without merit. PLAINTIFF began to think he was being put on a Performance Improvement Plan ("PIP") even though DAIGLE did not explicitly state this, and PLAINTIFF could not understand how this could be happening only one month after being recognized as a Top Performer and given his continuing outstanding performance.

14. After the meeting on or about February 26, 2020, PLAINTIFF, DAIGLE, and their

1   colleague met for drinks. All three men had a friendly discussion, but the colleague left early and
2   PLAINTIFF was alone with DAIGLE.

3        15.   PLAINTIFF asked DAIGLE if he was being put on a PIP and DAIGLE said he was
4   in fact putting PLAINTIFF on a PIP.

5        16.   PLAINTIFF could not understand how it was possible that he was being put on a PIP
6   when he had just recently been recognized for his outstanding performance and was achieving
7   outstanding results with several key clients. For example, PLAINTIFF's work on one of his accounts
8   had just been recognized as one of the largest and most successful migration and digital
9   transformation upgrade efforts on his team of more than 80 employees.

10       17.   PLAINTIFF was devastated by the PIP discussion and told DAIGLE that he was
11  confused because he thought he was performing well. DAIGLE then said the performance issues
12  could all go away if PLAINTIFF joined him (DAIGLE) in his room for a drink. After PLAINTIFF
13  responded with confusion, DAIGLE suggested to PLAINTIFF that they do favors for each other. In
14  response, PLAINTIFF told DAIGLE that he was married, and DAIGLE responded that he was too.
15  PLAINTIFF then responded that he is not gay, and DAIGLE said he also is not gay, and that he was
16  just talking about a little fun. PLAINTIFF said no and at that point, DAIGLE got up and walked
17  away angrily.

18       18.   PLAINTIFF felt awkward, ashamed, and embarrassed. He left that night and drove
19  home to his wife.

20       19.   PLAINTIFF reached out to the Director of Client Success for help regarding the
21  unfounded performance accusations DAIGLE was making. PLAINTIFF also reported the sexual
22  harassment to Human Resources (HR) on or about March 4, 2020.

23       20.   On his call with the Vice President of HR, PLAINTIFF pointed out that DAIGLE's
24  unfounded performance critiques came one month after PLAINTIFF received Top Performer status
25  with an extra compensation award. Although PLAINTIFF was absolutely mortified about telling
26  HR about the harassment, PLAINTIFF reported to the VP of HR that he had been harassed by
27  DAIGLE for several months and that PLAINTIFF had declined DAIGLE's overt request for sexual
28  favors in the very same conversation in which DAIGLE stated he was putting PLAINTIFF on a PIP.

The VP of HR asked for details about the harassment and PLAINTIFF provided them. The VP of HR then told PLAINTIFF that she would get back to him about the matter.

21. Although PLAINTIFF was not placed on a PIP, he was still put on a coaching plan. PLAINTIFF met or exceeded all of the goals in his coaching plan which was closed out on or about June 25, 2020.

22. On or about July 31, 2020, HR contacted PLAINTIFF and asked him to take his statement again regarding the sexual harassment he had endured. HR stated they would conduct an investigation into PLAINTIFF's allegations. PLAINTIFF was assured that the information he provided would be kept confidential and that he would not be retaliated against for his participation in the investigation. PLAINTIFF again provided information. On or about September 3, 2020, HR emailed PLAINTIFF and told him that they were unable to substantiate PLAINTIFF's allegations.

23. Meanwhile, in or about August 2020, PLAINTIFF's new manager – who had a close relationship to DAIGLE – reneged on the company's commitment to provide PLAINTIFF both financial assistance and occasional time off to attend an Executive MBA program. The Executive MBA program had been approved in or about January 2020. The new manager also manufactured false criticisms of PLAINTIFF's performance which PLAINTIFF rebutted with documentation and corroborating witnesses.

24. PLAINTIFF then complained about the retaliation he was enduring and HR again claimed they investigated PLAINTIFF's complaints and stated they were unable to substantiate his allegations. In the email summarizing the company's investigation, which PLAINTIFF received on March 3, 2021, the company stated that "PEGASYSTEMS has a no-retaliation policy. If you have any reason to believe that you are subjected to retaliation arising from your report or this investigation, please contact the People Organization immediately."

25. PLAINTIFF submitted a doctor's note putting him out on a finite, protected leave of absence beginning March 3, 2021. When submitting his doctor's note, PLAINTIFF explained that his medical leave of absence was due to his employer's unlawful conduct.

26. PLAINTIFF was terminated March 4, 2021, the day after the company closed its investigation into his protected complaints and the commencement of PLAINTIFF's protected leave

start date.

# FIRST CAUSE OF ACTION
### Sexual Harassment in Violation of the
### California Fair Employment and Housing Act, Gov't Code § 12940(a)

As a first, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS, DAIGLE, and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

27. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 26, inclusive, as though set forth here in full.

28. PEGASYSTEMS, DAIGLE, and DOES ONE through THIRTY are employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA"). DAIGLE was PLAINTIFF's direct supervisor and manager during the relevant time.

29. PEGASYSTEMS, DAIGLE, and DOES ONE through THIRTY sexually harassed PLAINTIFF and subjected him to a hostile work environment in violation of the California Fair Employment and Housing Act. During his employment, PLAINTIFF was subjected to sexual harassment and a hostile work environment, including, but not limited to, unwelcome and unwanted touching and propositions for sexual favors. DAIGLE continued to sexually harass PLAINTIFF over numerous months up to and including early 2020. All of this conduct was unwelcomed and unwanted. Defendant PEGASYSTEMS was aware that their Senior Director of Client Success was engaging in sexually inappropriate behavior but failed to respond appropriately.

30. DAIGLE also engaged in quid pro quo sexual harassment when in February 2020, DAIGLE informed PLAINTIFF that if PLAINTIFF agreed to do sexual favors for him in his hotel room, he could make the unfounded negative performance feedback about PLAINTIFF's job and the threatened PIP go away.

31. PLAINTIFF filed a timely charge of sexual harassment with the California Department of Fair Employment and Housing. The Department issued PLAINTIFF a right-to-sue letter within one year of the filing of this complaint. PLAINTIFF has exhausted his administrative remedies.

32. PLAINTIFF has suffered damages legally caused by these Defendants' harassment as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**SECOND CAUSE OF ACTION**
**Sexual Harassment in Violation of Public Policy**

As a second, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS, DAIGLE, and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

33. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 32 inclusive, as though set forth here in full.

34. At all times herein mentioned, PLAINTIFF was a male and fully competent to perform the duties to which he was assigned.

35. Defendants PEGASYSTEMS and DAIGLE sexually harassed PLAINTIFF in violation of public policy.

36. Said harassment violated the public policy of the State of California as stated in the California Fair Employment and Housing Act.

37. PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of the**
**California Fair Employment and Housing Act**

As a third, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

38. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 37, and, inclusive, as though set forth here in full.

39. Defendants PEGASYSTEMS and DOES ONE through THIRTY are employers in

the State of California, as defined in the California Fair Employment and Housing Act ("FEHA").

40. Defendants PEGASYSTEMS and DOES ONE through THIRTY retaliated against PLAINTIFF on the basis of his complaints about the treatment to which he was subjected to in violation of FEHA. PLAINTIFF's complaints included but were not limited to reporting the sexual harassment and retaliation he experienced to HR. For example, PLAINTIFF complained that DAIGLE had, among other things, touched his buttocks several times, harassed him and overtly asked for sexual favors, and put him on an unfounded and unwarranted performance counseling for not agreeing to do sexual favors. PEGASYSTEMS retaliated against PLAINTIFF following his protected activity, and said retaliation included but was not limited to: reneging on the prior commitment to support PLAINTIFF through his EMBA program, writing false and unfounded performance critiques, and engaging in coverup investigations. PLAINTIFF made a report specifically regarding the retaliation he was experiencing and he was terminated the day after the investigation was closed.

41. PLAINTIFF filed a timely charge of retaliation with the California Department of Fair Employment and Housing. The Department issued PLAINTIFF a right-to-sue letter within one year of the filing of this complaint. PLAINTIFF has exhausted his administrative remedies.

42. PLAINTIFF suffered damages legally caused by these Defendants' retaliation as described in the section below "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**FOURTH CAUSE OF ACTION**
**Discharge in Violation of Public Policy**

As a fourth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

43. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 42 inclusive, as though set forth here in full.

44. At all times herein mentioned, PLAINTIFF was a male who made protected complaints about the discriminatory and harassing conduct he experienced while employed with

1  Defendants. At all times herein mentioned, PLAINTIFF was also fully competent to perform the
2  duties to which he was assigned.

3        45.    Defendants PEGASYSTEMS and DOES ONE through THIRTY retaliated against
4  PLAINTIFF on the basis of protected complaints and discharged PLAINTIFF in violation of public
5  policy.

6        46.    Said discharge and retaliation violated the public policy of the State of California as
7  stated in the California Fair Employment and Housing Act.

8        47.    PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as
9  stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as
10 if set forth here in full.

**FIFTH CAUSE OF ACTION**
**Failure to Take Reasonable Steps to Prevent**
**Harassment and/or Retaliation from Occurring in Violation of the**
**California Fair Employment and Housing Act, Gov't Code § 12940(k)**

15     As a fifth, separate and distinct cause of action, PLAINTIFF complains against Defendants
16 PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action
17 alleges:

18       48.    PLAINTIFF hereby incorporates by reference Paragraphs 1 through 47 inclusive, as
19 though set forth here in full.

20       49.    At all times mentioned herein, Defendants had an obligation to follow laws including
21 California Government Code § 12940(k) requiring employers to investigate and prevent
22 discrimination or harassment in their workplaces.

23       50.    During his employment, PLAINTIFF made numerous complaints to Defendants of
24 unlawful conduct including harassment and/or retaliation. These complaints included but were not
25 limited to: telling HR about the sexual harassment including hostile work environment and quid pro
26 quo harassment he had endured as well as explaining that DAIGLE had touched his buttocks several
27 times, overtly asked for sexual favors, and put PLAINTIFF on performance counseling for not
28 agreeing to those sexual favors. HR took a full statement from PLAINTIFF in or about March 2020

and did nothing before asking for another statement months later. After a very short period of time, HR concluded that PLAINTIFF's complaints could not be substantiated. PLAINTIFF was transferred to work with another manager who still had a close relationship to DAIGLE, and gave him a performance review full of untruths and purposefully vague and subjective critiques. Defendants also backtracked on their commitment to support PLAINTIFF through his EMBA program. Following PLAINTIFF's protected complaints of retaliation, HR failed to respond appropriately and closed the investigation on March 3, 2021. PLAINTIFF was terminated the very next day on March 4, 2021.

51. Any investigations that Defendants performed were insufficient and self-serving. Furthermore, Defendants failed to take the reasonable steps necessary to prevent harassment and/or retaliation from occurring with respect to PLAINTIFF, even after unlawful conduct was repeatedly brought to their attention.

52. PLAINTIFF filed a timely charge of failure to prevent and correct discrimination, harassment, and/or retaliation with the California Department of Fair Employment and Housing. The Department issued PLAINTIFF a right-to-sue letter within one year of the filing of this complaint. PLAINTIFF has exhausted his administrative remedies.

53. PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**SIXTH CAUSE OF ACTION**
**Discrimination Based on Disability in Violation of the**
**California Fair Employment and Housing Act**

As a sixth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

54. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 53, inclusive, as though set forth here in full.

55. Defendants PEGASYSTEMS and DOES ONE through THIRTY are employers in

the State of California, as defined in the California Fair Employment and Housing Act ("FEHA").

56. Defendants PEGASYSTEMS and DOES ONE through THIRTY discriminated against PLAINTIFF on the basis of his disability including anxiety and depression and discharged PLAINTIFF because of his disability including anxiety and depression in violation of the California Fair Employment and Housing Act. PLAINTIFF was qualified to do his job as evidenced by the positive reviews he received; however, shortly after PEGASYSTEMS learned that PLAINTIFF was suffering from a disability that required reasonable accommodation, PLAINTIFF was terminated. Defendants engaged in a pattern and practice of discrimination. The policies of defendants which were neutral on their face resulted in a disparate impact on the class of employees with a disability and/or employees who needed accommodation and PLAINTIFF was treated differently because of his disability and/or need for accommodation.

57. PLAINTIFF filed a timely charge of disability discrimination and denial of reasonable accommodation with the California Department of Fair Employment and Housing. The Department issued PLAINTIFF a right-to-sue letter within one year of the filing of this complaint. PLAINTIFF has exhausted his administrative remedies.

58. PLAINTIFF suffered damages legally caused by these Defendants' discrimination as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth her in full.

### SEVENTH CAUSE OF ACTION
### Discharge in Violation of Public Policy

As a seventh, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

59. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 58, inclusive, as though set forth here in full.

60. At the relevant times herein mentioned, PLAINTIFF was a disabled person fully competent to perform the duties to which he was assigned.

61. Defendants PEGASYSTEMS and DOES ONE through THIRTY discriminated

against PLAINTIFF on the basis of his disability including anxiety and depression, and discharged PLAINTIFF because of his disability including anxiety and depression and/or because they did not want to accommodate PLAINTIFF's disability in violation of public policy.

62. Said discharge and discrimination violated the public policy of the State of California as stated in the California Fair Employment and Housing Act.

63. PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth her in full.

**EIGHTH CAUSE OF ACTION**
**Failure to Accommodate in Violation of the**
**California Fair Employment and Housing Act**

As an eighth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

64. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 63, inclusive, as though set forth here in full.

65. During his employment, PLAINTIFF always competently performed the duties to which he was assigned.

66. Defendants PEGASYSTEMS and DOES ONE through THIRTY denied PLAINTIFF accommodations for his disability including anxiety and depression, and discharged PLAINTIFF because they did not want to accommodate his disability including anxiety and depression in violation of the California Fair Employment and Housing Act.

67. PLAINTIFF filed a timely charge of disability discrimination and denial of reasonable accommodation with the California Department of Fair Employment and Housing. The Department issued PLAINTIFF a right-to-sue letter within one year of the filing of this complaint. PLAINTIFF has exhausted his administrative remedies.

68. PLAINTIFF suffered damages legally caused by these Defendants' discrimination as stated in the section below entitled "DAMAGES," which is incorporated here to the extent

pertinent as if set forth here in full.

### NINTH CAUSE OF ACTION
### Failure to Engage in the Interactive Process in Violation of the
### California Fair Employment and Housing Act

As a ninth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

69. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 68 as though set forth here in full.

70. During his employment, PLAINTIFF always competently performed the duties to which he was assigned.

71. Defendants PEGASYSTEMS and DOES ONE through THIRTY, failed to engage in the interactive process after learning PLAINTIFF suffered from a disability and required a reasonable accommodation in violation of the California Employment and Housing Act. PLAINTIFF informed his employer that he was suffering from disabling health conditions due to the unlawful conduct he experienced at work. PLAINTIFF submitted a doctor's note authorizing a finite leave of absence due to his health issues and hours later, he was terminated. Instead of reasonably accommodating PLAINTIFF, PEGASYSTEMS terminated him. Defendant did not ask PLAINTIFF questions regarding his condition, what sort of assistance he would need to return to work, what other available jobs PLAINTIFF would be able to perform, or otherwise engage in any sort of interactive process or attempt to provide accommodations.  Instead, PLAINTIFF was terminated.  Defendants engaged in a pattern and practice of failing to engage in the interactive process with disabled employees. The policies of defendants which were neutral on their face resulted in a disparate impact on the class of employees with a disability and PLAINTIFF was treated differently because of his disability.

72. PLAINTIFF filed a timely charge of disability discrimination and failure to engage in the interactive process with the California Department of Fair Employment and Housing. PLAINTIFF has exhausted his administrative remedies.

73. PLAINTIFF has suffered damages legally caused by Defendants failure to engage in the interactive process as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**TENTH CAUSE OF ACTION**
**Retaliation in Violation of the**
**California Fair Employment and Housing Act**

As a tenth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

74. PLAINTIFF incorporates by reference Paragraphs 1 through 73, inclusive, as though set forth here in full.

75. Defendants PEGASYSTEMS and DOES ONE through THIRTY are employers in the State of California, as defined in the California Fair Employment and Housing Act.

76. Defendants PEGASYSTEMS and DOES ONE through THIRTY retaliated against PLAINTIFF on the basis of his requesting leave due to his disability including anxiety and depression, and discharged PLAINTIFF in retaliation for his request to take leave due to his disability including anxiety and depression, in violation of the California Fair Employment and Housing Act and/or California Family Rights Act. Defendants engaged in a pattern and practice of retaliation. The policies of defendants which were neutral on their face resulted in a disparate impact on the class of employees who took leaves due to a medical condition or disability and PLAINTIFF was treated differently because of his request for leave.

77. PLAINTIFF filed a timely charge of retaliation with the California Department of Fair Employment and Housing. The Department issued PLAINTIFF a right-to-sue letter within one year of the filing of this complaint. PLAINTIFF has exhausted his administrative remedies.

78. PLAINTIFF suffered damages legally caused by these Defendants' retaliation as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

///

### ELEVENTH CAUSE OF ACTION
#### Discharge in Violation of Public Policy

As an eleventh, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

79. PLAINTIFF hereby incorporates by reference Paragraphs 1 through 78 inclusive, as though set forth here in full.

80. At all times herein mentioned, PLAINTIFF was fully competent to perform the duties to which he was assigned.

81. Defendants PEGASYSTEMS and DOES ONE through THIRTY retaliated against PLAINTIFF on the basis of his requesting a leave due to his disability including anxiety and depression, and discharged PLAINTIFF in retaliation for his requesting leave due to his disability including anxiety and depression in violation of public policy.

82. Said discharge and retaliation violated the public policy of the State of California as stated in the California Fair Employment and Housing Act and/or California Family Rights Act.

83. PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### TWELFTH CAUSE OF ACTION
#### Whistleblower Retaliation
#### (Cal. Lab. Code, § 1102.5)

As a twelfth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

84. PLAINTIFF hereby incorporates by reference paragraphs 1 through 6, inclusive, as though set forth here in full.

85. In or around October 2020, PLAINTIFF reported on Defendant's Hotline that he had learned a coworker was receiving kickbacks from a partner company.

86. In response, PEGASYSTEMS' internal auditors met with PLAINTIFF on or about February 5, 2021. The auditors/investigators asked PLAINTIFF questions about the specific conduct about which he had complained on the Hotline, and also outright asked PLAINTIFF to confirm if he was the anonymous reporter of the kickback allegations to the Hotline in or about October 2020. PLAINTIFF admitted that he was.

87. PLAINTIFF had reasonable cause to believe that his complaints disclosed violations of state and/or federal laws and regulations, including but not limited to California statutes against commercial bribery (see Cal. Pen. Code § 641.3) and fraud (see Cal. Civ. Code, §§ 1572, 1709).

88. Defendants PEGASYSTEMS and DOES ONE through THIRTY retaliated against PLAINTIFF for disclosing and complaining about PEGASYSTEMS' unlawful commercial bribery and/or fraud. The retaliation included but was not limited to: falsely criticizing PLAINTIFF's job performance; reneging on the company's commitment to support PLAINTIFF through his EMBA program; and ultimately terminating PLAINTIFF's employment on or about March 4, 2021.

89. PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**THIRTEENTH CAUSE OF ACTION**
**Discharge in Violation of Public Policy**

As a thirteenth, separate and distinct cause of action, PLAINTIFF complains against Defendants PEGASYSTEMS and DOES ONE through THIRTY, and each of them, and for a cause of action alleges:

90. PLAINTIFF hereby incorporates by reference paragraphs 1 through 6, and 84 through 89, as though set forth here in full.

91. At all times, PLAINTIFF was a person fully competent to perform the duties to which he was assigned.

92. Defendants PEGASYSTEMS and DOES ONE through THIRTY terminated PLAINTIFF's employment in retaliation for PLAINTIFF's reporting of Defendant's conduct to which PLAINTIFF had reasonable cause to believe violated state and/or federal laws and

regulations, including but not limited to California statutes against commercial bribery and fraud. This discharge violated the public policies of the State of California as stated in the California Labor Code section 1102.5.

93. PLAINTIFF suffered damages legally caused by these Defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated to the extent pertinent as if set forth here in full.

**DAMAGES**

94. As a legal result of the conduct by Defendants of which PLAINTIFF complains, PLAINTIFF suffered and continues to suffer substantial losses in earnings including salary, cash bonus, equity, retirement benefits, and health benefits. PLAINTIFF will seek leave to amend this complaint to state the amount or will proceed according to proof at trial.

95. PLAINTIFF suffers emotional distress as a legal result of the conduct by Defendants of which PLAINTIFF complains, including mental distress, suffering and anguish as a legal result of Defendants' outrageous conduct, reacting to his discharge with humiliation, embarrassment, anger, disappointment and worry, all of which is substantial and enduring. PLAINTIFF will seek leave to amend this complaint to state the amount or will proceed according to proof at trial.

96. At all material times, Defendants, and each of them, knew that PLAINTIFF depended on his wages and other employee benefits as a source of earned income. At all material times, Defendants were in a position of over PLAINTIFF, with potential to abuse that power. PLAINTIFF was in a vulnerable position of which Defendants were aware because of his relative lack of power, because of his reliance on Defendants' assurances and forbearance of the possibility of becoming employed elsewhere, because he had placed his trust in Defendants, because he depended on his employment for his self-esteem and sense of belonging, because he relied upon his employment as a source of income for his support, because a wrongful termination of PLAINTIFF's employment would likely harm PLAINTIFF's ability to find other employment, and because of the great disparity in bargaining power between PLAINTIFF and his employer.

97. Notwithstanding such knowledge, Defendants, and each of them, acted oppressively,

fraudulently, and maliciously, in willful and conscious disregard of PLAINTIFF's rights, and with the intentions of causing or in reckless disregard of the probability of causing injury and emotional distress to the PLAINTIFF.

98. Further, Defendants were informed of the oppressive, fraudulent and malicious conduct of their employees, agents and subordinates, and ratified, approved, and authorized that conduct.

99. The foregoing conduct of Defendants, each of them, was intentional, willful, and malicious, and PLAINTIFF is entitled to punitive damages in an amount to conform to proof.

100. PLAINTIFF is also entitled to attorneys' fees and costs pursuant to California Government Code § 12965(b) and/or California Labor Code § 1102.5(j) and/or California Code of Civil Procedure § 1021.5.

### INJUNCTIVE RELIEF

101. PLAINTIFF has suffered irreparable injury and immediate harm due to Defendants' acts. PLAINTIFF has no other legal remedy. In addition to the other relief requested in this Complaint, PLAINTIFF seeks injunctive relief to ensure that defendants do not sexually harass and/or discriminate against, and/or retaliate against other employees.

### PRAYER

Wherefore PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as follows:

1. For money judgment representing compensatory damages including lost salary, cash bonuses, equity, retirement benefits, and health benefits, together with interest on these amounts, according to proof;

2. For a money judgment for mental pain and anguish and emotional distress, according to proof;

3. For an award of punitive damages, according to proof;

4. For costs of suit and attorney fees;

5. For prejudgment and post judgment interest;

6. For injunctive relief;

7. For any other relief that just and proper;

8. For attorney fees pursuant to California Government Code § 12965(b) and/or California Labor Code § 1102.5(j) and/or California Code of Civil Procedure § 1021.5.

Dated: December 7, 2022                    LAWLESS, LAWLESS & McGRATH

                                By: _____
                                    Barbara A. Lawless
                                    Emily S. McGrath
                                    Attorneys for PLAINTIFF

## JURY TRIAL DEMANDED

PLAINTIFF demands trial of all issues by jury.

Dated: December 7, 2022                    LAWLESS, LAWLESS & McGRATH

                                by _____
                                   Barbara A. Lawless
                                   Emily S. McGrath
                                   Attorneys for PLAINTIFF

# PROOF OF SERVICE

I, DONNA WALLACE, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at Lawless, Lawless & McGrath, 354 Pine Street, Fourth Floor, San Francisco, CA 94104. On the date shown below, I served the following document(s):

**FIRST AMENDED COMPLAINT FOR DAMAGES ARISING FROM:
SEXUAL HARASSMENT; PUBLIC POLICY VIOLATION;
RETALIATION; DISCHARGE IN VIOLATION OF PUBLIC POLICY;
FAILURE TO PREVENT OR CORRECT HARASSMENT AND/OR RETALIATION;
DISABILITY DISCRIMINATION; FAILURE TO ACCOMMODATE;
FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS;
RETALIATION; WHISTLEBLOWER RETALIATION;
DISCHARGE IN VIOLATION OF PUBLIC POLICY;
INJUNCTIVE RELIEF, FOR ATTORNEY'S FEES AND COSTS
AND FOR PUNITIVE DAMAGES**

on the following persons at the locations specified:

| | |
|---|---|
| Heather Lanyi<br>Littler<br>333 Bush Street, 34th Floor<br>San Francisco, CA 94104<br>Email: hlanyi@littler.com | Joshua J. Cliffe<br>Littler<br>333 Bush Street, 34th Floor<br>San Francisco, CA 94104<br>Email: jcliffe@littler.com |

in the manner indicated below:

☐ **BY UNITED STATES MAIL:** Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the Lawless & Lawless Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☒ **BY ELECTRONIC MAIL:** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the person(s) at the electronic service address(es) listed above. Such document(s) were transmitted via electronic mail from the electronic address: dwallace@lawlesssf.com ☒ in an Adobe Acrobat portable document format ("PDF").

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed December 9, 2022, at Berkeley, California.

_____
Donna Wallace